# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | CR417-002 |
| | ) | |
| BILLY WAYNE CHENEY | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

The Court granted defendant Billy Wayne Cheney's unopposed request for an 18 U.S.C. § 4241 mental-health evaluation to determine whether he is competent to stand trial. Doc. 31. He was examined at the Federal Correctional Institution in Butner, North Carolina (FCI Butner), and Forensic Psychologist Dr. Rebecca Barnette, Psy.D., issued a report of her findings. *See* doc. 28. The Court held a competency hearing on August 9, 2017, at which Dr. Barnette testified as the sole witness.

Due Process requires that a criminal defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). Neither a diagnosed psychological condition nor treatment with anti-psychotic drugs, standing alone, is

sufficient to establish incompetency. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges," and "[t]he fact that a defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial." (quotes and cites omitted)). For purposes of resolving this motion, the Court assumes that the burden of proof falls on the government to show that a defendant is competent.[1] Section 4241(d) requires the determination of competency to be made by a preponderance of the evidence.

---

[1] *See United States v. Izquierdo*, 448 F.3d 1269, 1277 (11th Cir. 2006) ("Although Supreme Court precedent points in that direction, our predecessor court has stated that '[t]here can be no question that in federal criminal cases the *government* has the burden of proving [a] defendant competent to stand trial at the [competency] hearing.'" (quoting *United States v. Makris*, 535 F.2d 899, 906 (5th Cir. 1976)); *United States v. Marbley*, 410 F.2d 294, 295 (5th Cir. 1969); *see also United States v. Young*, 2016 WL 6405842 at * 2 (N.D. Ga. Sept. 21, 2016) ("Although not settled, the Court will assume for purposes of resolving the issue of defendant's competency to stand trial in this case, that it is the government's burden to prove defendant is competent by a preponderance of the evidence." (citing *Izquierdo*, 448 F.3d at 1276-78). *But see, e.g., United States v. Short*, 2017 WL 772343 at * 2 (S.D. Ga. Feb. 28, 2017) ("Defendant is not entitled to a presumption of incompetency, and he assumes the burden of proof to establish his incompetency by a preponderance of the evidence." (citing *Cooper v. Oklahoma*, 517 U.S. 348, 355 (1996); *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005)). The Supreme Court has stated that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper*, 517 U.S. at 361. Despite the apparent strength of that statement, the Eleventh Circuit relied on standing Circuit precedent. *Izquierdo*, 448 F.3d at 1277 (noting that *Cooper*'s statement placing the burden of establishing incompetence on the defendant was dicta, and

2

Cheney has a long history of mental health complaints. *See* doc. 34 at 6 (reporting mental health complaints and treatment dating back to Cheney's teen years -- he is currently 61). He also has a long history of violence and consequent incarceration. *See id.* at 7, 14 ("Mr. Cheney has spent a great deal of his life incarcerated . . ." and "has an extensive adult criminal history."). During the course of his incarceration and treatment, several examiners have noted his tendency to fabricate or exaggerate psychological complaints. *See id.* at 8, 12 (quoting from a 2005 examiner's opinion "that Mr. Cheney was attempting to exaggerate and/or feign psychiatric symptoms and cognitive deficits. . ."; a report from 2006 noting that behavioral evidence was inconsistent with reported psychological problems; and a 2014 assessment that reports of

---

citing *Makris*' statement of the burden upon the government's pre-trial motion to determine defendant's competency). It is this discrepancy between Supreme Court dicta and Circuit precedent that led the Northern District of Georgia to deem the issue "not settled." *See Young*, 2016 WL 6405842 at * 2.

Despite the ambiguity, the *Cooper* Court recognized that the location of the burden of proof would affect the outcome of a competency determination "'only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent.'" *Cooper*, 517 U.S. at 355 (quoting *Medina v. California*, 505 U.S. at 449). No such equipoise of evidence is present here; the outcome of the instant competency determination does not turn on the burden of proof issue. Since the preponderance of evidence weighs in favor of Cheney's competency, the Court need not resolve whether the burden of proof rested on the Government to prove competence or Cheney to prove incompetence.

auditory hallucinations were inconsistent with behavior and conclusion that he was "over exaggerating his symptoms in an effort to be celled alone"). Dr. Barnette considered both Cheney's criminal and medical history, including the impressions and conclusions of the prior examiners, in her assessment of Cheney's competency.

Dr. Barnette's evaluation also included the administration of several formal diagnostic tests. Doc. 34 at 18-20. The results of a test to evaluate Cheney's self-reported memory problems "suggest[ed] that he was feigning memory deficits." *Id*. at 18. His performance on a second test indicated a pattern "uncommon even in individuals with genuine, severe psychopathology who report credible symptoms" and "strongly associated with non-credible memory complaints." *Id*. at 19. Cheney's performance on further tests "demonstrated a pattern . . . strongly characteristic of an individual feigning a mental disorder" and "rarely observed in individuals with genuine disorders." *Id*.

Based on Cheney's history, diagnostic tests, behavioral observation, and interviews, Dr. Barnette diagnosed malingering, generalized anxiety disorder, antisocial personality disorder, and an alcohol use disorder, in sustained remission. Doc. 34 at 20. In support of her diagnosis of

malingering, Dr. Barnette noted that Cheney's "reported symptoms of active psychosis are not consistent with objective observations of his functioning . . . ." *Id.* at 21. Although she diagnosed several legitimate conditions, she concluded that Cheney's reports of more severe psychological symptoms were not supported by objective evidence. *See id.* at 23 (noting that his reported symptoms "have been largely nonspecific" and "typically co-occur with a request . . . and, there are otherwise, prolonged periods in which he makes no reports of psychological distress.").

To evaluate Cheney's competency to proceed, despite his diagnosed psychological problems, Dr. Barnette conducted "a semi-structured interview designed to assess an individual's knowledge of general legal proceedings." Doc. 34 at 24. That interview demonstrated his understanding of the current charges against him, their severity and possible penalties, and the procedural aspects of his case (*i.e.*, the role of the various participants and his alternatives to respond to the charges). *Id.* Dr. Barnette noted that he has "a coherent, non-delusional understanding of his current legal situation[,] . . . [and] appears motivated to help himself in the legal process and his discussion of his

5

legal choices and strategies was reasonable." *Id.* She, therefore, concluded that "although the defendant has been diagnosed with an anxiety disorder, a personality disorder, and a substance abuse disorder, these disorders do not adversely impact his ability to understand the nature and consequences of the proceedings against him and to assist properly in his defense." *Id.* at 25.

At the hearing, Cheney's counsel cross-examined Dr. Barnette. His examination focused on Cheney's drug regimen,[2] specifically whether any of his reported symptoms might be explained by adverse interaction among his prescriptions. Given that she was not the prescribing physician and not an expert in psychopharmacology, Dr. Barnette was only able to provide general insight into the possible side effects associated with Cheney's various prescriptions. She testified that Cheney was under the care of a prescribing physician, who would

---

[2] Dr. Barnette reported that Cheney arrived at FCI Butner already having been "prescribed Wellburtin, Risperdal (antipsychotic), and Elavil." Doc. 34 at 18. At FCI Butner, however, his Wellbutrin prescription was discontinued out of concern for potential side effects. *Id.* After he complained of depression and auditory and visual hallucinations, the dosage of his Elavil prescription was increased and he was prescribed Effexor (antidepressant), but his Risperdal remained consistent. When he continued to report issues of "paranoia" and auditory and visual hallucinations, his regime was adjusted again, increasing his dosage of Risperdal and adding Cogentin, which is used to treat the side effects of antipsychotic medications, but his Elavil and Effexor prescriptions remained the same. *Id.*

6

monitor his medications for adverse interactions. To her knowledge, none of the medications, either singly or in combination, were likely to affect his memory or cause hallucinations -- which were the reported symptoms underlying her diagnosis of malingering. She also testified that his medications were not likely to affect the outcome of the tests she applied to diagnose Cheney. Thus, defense counsel's examination provides no basis to doubt Dr. Barnette's conclusion that Cheney is competent.

Based on Dr. Barnette's report and her testimony, therefore, the Court recommends that the District Judge find Cheney **COMPETENT** to stand trial.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 21st day of August, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA